╠┤

FILED

JAN 13 2006
kT

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA

UNITED STATES BANKRUPTCY COURT

EASTERN DISTRICT OF CALIFORNIA

In re                  Case No. 05-10919-A-7K
                       DC No. KDG-2
JAMES L. GRIFFITH and
TWILA M. GRIFFITH        FINDINGS OF FACT AND
                       CONCLUSIONS OF LAW

            Debtor.
_____/

An evidentiary hearing was held November 16, 2005, on the trustee's objection to claim of exemption filed by debtors James L. Griffith and Twila M. Griffith. Following the hearing, the court took the matter under submission. This memorandum contains findings of fact and conclusions of law required by Federal Rule of Bankruptcy Procedure 7052 and Federal Rule of Civil Procedure 52. This is a core proceeding as defined in 28 U.S.C. §157(b)(2)(B).

At the hearing, James Griffith, Twila Griffith, Dena Griffith, and trustee Randell Parker testified. Documentary evidence was admitted. Also, the parties stipulated to certain facts as reflected in the Stipulations Regarding Facts and Evidence filed November 10, 2005.

The Facts.

Prior to December 23, 2004, James and Twila Griffith, husband and wife, held record ownership of their residence at 6260 Lynch Canyon Drive, Lake Isabella, California (the "Residence"). The Residence was subject to a deed of trust in the amount of about $73,000. On December 22, 2004, the Griffiths

1

1 executed a quitclaim deed in favor of their daughter, Dena
2 Griffith, and that quitclaim deed was recorded with the Office of
3 the Kern County Recorder.  After the quitclaim deed was recorded,
4 Dena Griffith attempted to obtain a mortgage to refinance the
5 existing mortgage on the Residence and to obtain additional cash.
6 She represented to prospective lenders that she held title to the
7 Residence.

8     On February 10, 2005, the Griffiths filed a chapter 7 case
9 in pro se.  They did not list any real property as an asset on
10 Schedule A, and they did not claim an exemption for any real
11 property on Schedule C.  Schedule D did not show any lienholder
12 on any real property owned by them.  Their Statement of Financial
13 Affairs did not show any transfer of any property or gifts in
14 response to Questions 7 or 10.  Their Schedules showed assets of
15 a value of $23,516 and liabilities totaling $119,890.

16     At the meeting of creditors on March 15, 2005, the trustee
17 asked the Griffiths whether they had sold, traded or transferred,
18 or given away any property in the year before they filed their
19 bankruptcy case.  In response, they disclosed that they had
20 transferred the Residence to Dena Griffith, their daughter.  The
21 trustee informed them that this was a problem, recommended that
22 they obtain counsel, and told them that he would have to recover
23 the property and sell it to pay their creditors.  On March 21,
24 2005, the trustee filed a report that assets had been found in
25 the case and requested the clerk to send a notice to file proofs
26 of claim due to possible recovery of assets.  About a month after
27 the § 341 meeting had concluded, the debtors obtained an
28 attorney.  On or about April 28, 2005, Dena Griffith executed a

2

quitclaim deed transferring the Residence back to the Griffiths
as joint tenants, and at the same time, the Griffiths filed an
amended Schedule A showing the Residence as real property owned
by them with a fair market value of $150,000; and subject to a
secured claim of $73,911.04.  They also filed an amended Schedule
C, showing the Residence as exempt under California Code of Civil
Procedure     § 704 in the amount of $150,000.  They amended
Schedule D to show GMAC Mortgage Company as a creditor holding a
secured claim on the Residence in the amount of $73,911.04.  On
May 25, 2005, the trustee filed his objection to claim of
exemptions, and on June 7, 2005, he filed an adversary proceeding
to recover the Residence as a fraudulent transfer.  On September
30, 2005, the parties stipulated that the adversary proceeding
was moot because the property had been transferred back to the
Griffiths.

     The above facts are from the Stipulations Regarding Facts
and Evidence.  While the parties agree on what happened, they do
not agree on the debtors' motives or on how the events should be
characterized.

     James Griffith testified that he is disabled and that his
wife, Twila Griffith, was responsible for paying the bills and
for financial matters.  In October 2004, Dena Griffith started
helping her parents to pay bills.  She did not earmark the money
she gave them specifically to pay their mortgage.  Mr. and Mrs.
Griffith also helped Dena. Mrs. Griffith helped her with her
children (Dena works full time), and Mr. Griffith helped by tasks
such as mowing the lawn.  Mr. and Mrs. Griffith wanted to
refinance the Residence, but they were not able to obtain

3

refinancing because their income was too low.  They then decided to ask their daughter, Dena Griffith, to help.  But, without owning the Residence, she could not obtain a loan either.  Dena Griffith told her parents that they would have to put their Residence in her name.  So, according to Mr. Griffith, they deeded the house to Dena so she could get a loan to pay their debts.  It was their understanding that after Dena got the loan financed by the Residence, she would deed the Residence back to them.  The Griffiths never changed the mortgage or the utilities from their name into Dena's name and they did not deliver the deed to her, although they did record it.

Unfortunately, Dena Griffith was not able to refinance the Residence because she was unable to get a loan in enough money to assist her parents.  Therefore, Mr. Griffith contacted a bankruptcy petition preparer, "We the People," to file a bankruptcy case.  He got papers from We the People, filled them out, and paid We the People $125.  A Mr. Sisco of We the People took the papers that the Griffiths had filled out.  Mr. Griffith mentioned the house transfer to Mr. Sisco, who said that it should not be a problem.  The court found Mr. Griffith's testimony about his contact with Mr. Sisco of We the People to be credible.

However, Mr. Griffith did not review the papers very carefully before he signed them.  He did tell the trustee the truth at the § 341 meeting.  Both Mr. and Mrs. Griffith think they went immediately the day of the § 341 meeting to get the deed and give it to Mr. Parker.  According to them, they provided whatever Mr. Parker asked for.  Mr. Parker gave them the names of

4

three attorneys and told them that Mr. Samples would be the best
person to contact.

Mr. Griffith, at one point, was a reserve deputy sheriff,
and he knows the importance of any documents filed with the court
being completely accurate.  He knows that the Residence is his
house, and he knew that it was his house when he filed
bankruptcy.  He believed it was his house when he filed the
bankruptcy case, and yet, on Schedule A, he did not list it as
his house.  He did know he had to list the personal property he
owned on his schedules.  He also knows what a secured debt is,
but despite this, he did not list the debt to GMAC on his
schedules.  Mr. Griffith knows what a transfer of property is but
did not list the transfer of the house to Dena Griffith on his
Statement of Financial Affairs.  His intent in transferring the
property to Dena Griffith, he testified, was for her to refinance
the house so he and Mrs. Griffith could get the money to pay off
their debts.  This was the only reason.

However, his testimony was inconsistent in that at the § 341
meeting, the Griffiths testified that they transferred the
property to Dena Griffith because she had been making the
payments and they thought she should have the property.

After the trustee's questions at the § 341 meeting, the
Griffiths realized that the transfer of the house was a problem.

Twila Griffith testified.  She and James Griffith have been
married for 39 years.  Their daughter, Dena, has given them
money, and with that money, Twila Griffith has made the mortgage
payments.  Since Mr. Griffith has been disabled, Dena has given
them $400 every two weeks.  Twila wrote the checks to pay the

5

bills from that money.  For twenty years, Mrs. Griffith was
employed driving handicapped children, but she retired from that
job in 2000.  The Griffiths' bills mounted when Mr. Griffith's
disability insurance was delayed in paying the amounts owed to
him.  Consequently, the interest rate on their credit card bills
went up to 29%, more or less.  In 2004, they realized that they
could not service their debt.  They tried to get a loan on their
house, but they could not because their income was too low.  They
thought $50,000 would be enough.  They then tried to refinance
with Dena as a co-signor.  They were desperate.  They did not
intend to give Dena the house.  They never actually gave her the
deed, although it was recorded.  They never changed the ownership
on the insurance, the garbage collection, or the utilities, and
they never told the mortgage company about the transfer.

It was impossible for Dena to get the loan even after the
transfer because she would have had to pay her own debts as well,
and they could not get enough money from the refinance.

Mrs. Griffith vaguely looked over the bankruptcy schedules
before she signed them.  According to her, they had no intent to
hide the transfer.  Mrs. Griffith did not know the transfer was a
problem until the trustee told her so at the § 341 meeting.

The court found Mrs. Twila Griffith to be less than credible
when she testified about the bankruptcy schedules.  She stated
that when she signed the Schedules of Assets and Liabilities, she
did not know what real property was.  The court found that
statement not to be credible.  She also testified that she did
not recall the mortgage being on the questionnaire given to them
by the bankruptcy petition preparer.  The court also found this

6

less than credible.  She testified that she did not really read
the Statement of Financial Affairs before signing it.    Mrs.
Griffith was vague about her understanding about the ownership of
the house when she filed bankruptcy.  She tried to distinguish
between what she thought in her mind and what she put on the
papers.  She did testify that she did not intend to lie and that
she was really scared.

    Dena Griffith testified that she lives next door to her
parents and that her parents look after her children while she
works.  Both of them help her out.  She knew her parents were
struggling financially.  She gives them money to help them out.
She applied for a loan to help them out but did not get the loan
because she had not owned her house long enough.  She was told
she had to have title to her parents house in her own name to get
a loan that they could use.  She never considered her parents'
house to be her house, and she never paid any of the ongoing
expenses of the house other than giving her parents $400 twice a
month to pay their bills.  Her parents still had the key to the
house and lived there.  After her parents filed bankruptcy, they
told her the house had to be put back in their name, so she
signed the quitclaim deed again.  She never thought of the house
as hers, and she never tried to conceal anything.  She just
wanted to be able to borrow money to help her parents out.  Dena
Griffith testified that the transfer of the house to her through
the quitclaim deed was voluntary.  She strongly recommended that
her parents do it so that she could get financing, but
transferring the house to her was a voluntary decision on their
part.  She did not pay them anything for the house.

7

## Legal Issues.

At issue here is Bankruptcy Code § 522(g).  It provides, in relevant part, as follows:

> ". . . The debtor may exempt . . . property that the trustee recovers under § 510(c)(2), 542, 543, 550, 551, or 553 of this title, to the extent that the debtor could have exempted such property . . . if such property had not been transferred if -
>
> (1)(A) such transfer was not a voluntary transfer of such property by the debtor; and
>
> (1)(B) the debtor did not conceal such property . . ."

The purpose of § 522(g) is "to allow an exemption where a property interest has been *involuntarily* taken from a debtor by means such as an execution, repossession, or certification of judgment [because] it will be inequitable not to permit a debtor to assert an otherwise allowable exemption . . ."  <u>Glass v. Hitt (In re Glass)</u>, 50 F.3d 565, 569 (9th Cir. 1995)(emphasis in original, citations and internal quotations omitted).

For the Griffiths to be able to exempt the Residence, several requirements must be met.  First, the trustee must have recovered the Residence for the estate.  Second, the transfer of the Residence by the Griffiths to their daughter must not have been a voluntary transfer.  Third, the Griffiths must not have concealed the property.

## Was there a transfer?

The debtors argue that because the quitclaim deed was never delivered by Twila and James Griffith to Dena Griffith there was no transfer.  The Griffiths continued to live in the Residence and continued to pay the bills associated with the Residence.  However, the quitclaim deed was executed and recorded.  Dena

8

1  Griffith obtained to obtain a mortgage in her own name to
2  refinance the existing mortgage on the Residence.    She
3  represented that she held title to the Residence when she
4  attempted to obtain that mortgage.    The original schedules filed
5  by the Griffiths do not reflect ownership of the Residence or any
6  debt secured by the Residence.    The Griffiths testified at the
7  § 341 meeting that they had transferred the Residence to Dena.

8      Bankruptcy Code § 101(54) defines transfer as "every mode,
9  direct, or indirect, absolute or conditional, voluntary or
10 involuntary, of disposing of or parting with property or with an
11 interest in property including retention of title as a security
12 interest . . ."

13     Under California law, the execution and recordation of a
14 quitclaim deed effects a transfer of "any title, interest, or
15 claim which the grantor may have in the premises."    City of
16 Manhattan Beach v. Superior Court, 13 Cal. 4th 232, 239
17 (1996)(internal quotations omitted).    Here, the execution and
18 recordation of the quitclaim deed to Dena Griffith operated as a
19 transfer under California law and under the Bankruptcy Code.
20 Also, the recorded deed was marked for delivery to Dena Griffith
21 at the address of the Residence.

22 Was the transfer voluntary?

23     The transfer of the Residence to Dena Griffith by Twila and
24 James Griffith was voluntary.    Although the debtors gave varying
25 explanations of why they transferred the Residence to Dena
26 Griffith, there is no doubt that they were not coerced into
27 making the transfer.    At various times, they said that they
28 transferred the property to her because they thought she should

9

1 || have it since she had been making the mortgage payments for
2 || several months.  They also have testified that they thought the
3 || Residence should be transferred to her so that she could obtain a
4 || loan on the Residence to give them money to pay their debts.  The
5 || Residence was not involuntarily taken from the Griffiths by an
6 || execution or repossession.  They made the decision to transfer
7 || title to the Residence to their daughter, Dena Griffith.
8 || Therefore, the transfer was voluntary.

9 || Did the Griffiths conceal the property?

10 || The Griffiths did not list the Residence on their original
11 || bankruptcy schedules.  They also did not list the debt secured by
12 || the Residence on their original bankruptcy schedules, and their
13 || original Statement of Financial Affairs does not reflect the
14 || transfer of the Residence to Dena Griffith.  Only at the § 341
15 || meeting, when questioned by the trustee, did the Griffiths
16 || acknowledge that they had transferred the Residence to Dena
17 || Griffith.  Shortly after the § 341 meeting, the Griffiths
18 || retained counsel at the trustee's suggestion and amended their
19 || Schedules of Assets and Liabilities to show the Residence, the
20 || debt secured by the Residence, and an exemption for the
21 || Residence.

22 || Under the circumstances, the court finds that had the
23 || trustee not questioned the Griffiths about the transfer, the
24 || existence of their interest in the Residence and their transfer
25 || of it would never have been disclosed by them to the bankruptcy
26 || trustee.  Both Mr. and Mrs. Griffith were aware that they had an
27 || obligation to tell the truth and that they signed their Schedules
28 || of Assets and Liabilities and Statement of Financial Affairs

10

1  under penalty of perjury.  Yet, they neglected to include either
2  the ownership or the transfer of the Residence.  Therefore, the
3  court finds and concludes that they did conceal the Residence and
4  the transfer when they filed their bankruptcy case.
5  Did trustee recover the property within the meaning of § 522(g)?

6       Perhaps the debtors' strongest argument in opposition to the
7  trustee is that they voluntarily disclosed the transfer when they
8  realized that it was important, and they caused Dena Griffith to
9  quitclaim the property back to themselves immediately upon
10 discovery of the problem.  They also immediately upon discovery
11 of the problem amended their bankruptcy schedules to reflect that
12 the Residence is property of the bankruptcy estate.  The trustee
13 did file an adversary proceeding to recover the Residence, and
14 that adversary proceeding was resolved by a stipulation when the
15 Residence was voluntarily quitclaimed back to the debtors by Dena
16 Griffith.

17      The Ninth Circuit decision of In re Glass, 60 F.3d 565 (9th
18 Cir. 1995) is instructive.  In that case, Mr. Glass transferred
19 an interest in real property to his son before filing a
20 bankruptcy case.  The trustee was informed by a creditor about
21 the transfer at the § 341 meeting.  The trustee told Mr. Glass to
22 amend his bankruptcy schedules to reflect any interest he might
23 have in the property, and the trustee filed an objection to
24 Glass's claim of a homestead exemption.  The objection stated
25 that the trustee intended to seek an avoidance of the transfer as
26 a fraudulent transfer.  Three days later, Glass's son reconveyed
27 the property to Glass.  The bankruptcy court overruled the
28 trustee's objection to Glass's claim of homestead exemption,

11

1   holding that Glass was entitled to claim the homestead exemption
2   because the trustee did not "direct any action against the
3   transferee's son to achieve reconveyance of the residence to the
4   estate, and thus, the trustee did not 'recover' the property."
5   Id. at 567.

6        The Bankruptcy Appellate Panel reversed.  The BAP concluded
7   that the "Trustee's actions toward the Debtor directly, and the
8   Debtor's son indirectly, were instrumental in the return of the
9   property to the estate."  The BAP also concluded that "the only
10  reasonable inference to be drawn is that the Trustee's promise of
11  legal action had a coercive effect on father and son, directly
12  resulting in the return of the property to the estate."  Hitt v.
13  Glass(In re Glass), 164 B.R. 759, 764-65 (9th Cir. BAP 1994),
14  quoted in 60 F.3d at 567.

15       The Ninth Circuit agreed with the Bankruptcy Appellate
16  Panel.  The Ninth Circuit stated:

17          "The BAP accurately observed that '[p]roviding an exemption
            for this Debtor, who fraudulently transferred property and
18          then was not honest in reporting his assets or prepetition
            transfers, would not promote either with specific policy of
19          § 522(g) or the general policies of the Code."

20  Id. at 765.  In re Glass, 60 F.3d at 569.

21       According to both the Ninth Circuit Court of Appeals and the
22  Ninth Circuit Bankruptcy Appellate Panel, the Bankruptcy Code
23  does not contemplate exemptions on behalf of debtors who have
24  voluntarily transferred their property rights so as to give rise
25  to the trustee's avoidance powers.  Id. at 569 (internal
26  quotations omitted).  In Glass, the trustee's stated intention to
27  seek avoidance of the transfer was sufficient.

28       In this case, the trustee not only stated his intention to

                                    12

1 seek avoidance of the transfer, the trustee did file an adversary
2 proceeding to avoid the transfer.  Thus, under the Ninth Circuit
3 decision in <u>In re Glass</u>, the trustee did recover the property for
4 the estate, and the last requirement of § 522(g) is met.
5 <u>Conclusion</u>.

6      In this case, Mr. and Mrs. Griffith transferred their
7 Residence to their daughter before they filed their bankruptcy
8 case.  They then signed under penalty of perjury Schedules of
9 Assets and Liabilities and a Statement of Financial Affairs that
10 neglected to mention the existence of the Residence, the debt
11 secured by the Residence, or the transfer of the Residence.  Not
12 until the trustee directly questioned them at the meeting of
13 creditors did they acknowledge that they had transferred the
14 Residence.  At the trustee's suggestion, they obtained an
15 attorney and that attorney advised them, properly, to amend their
16 schedules and to obtain reconveyance of the Residence.  This they
17 did.  The trustee had filed an adversary proceeding and an
18 objection to their claim of exemptions.

19      Under all the facts and circumstances of this case, the
20 transfer was voluntary, the debtors concealed the transfer on
21 their bankruptcy schedules, and the trustee recovered the
22 property for the estate.

23      For the above reasons, the trustee's objection to claim of
24 exemption is sustained.  Counsel for the trustee may present an
25 appropriate form of order.
26 DATED: January 13 , 2006.

27
28                              _____
                               WHITNEY RIMEL, Judge
                               United States Bankruptcy Court

                                    13

PROOF OF SERVICE BY MAIL

STATE OF CALIFORNIA    )
                       )  ss.
COUNTY OF FRESNO       )

I am a citizen of the United States and a resident of the county aforesaid; I am over the age of eighteen years and not a party to the within above-entitled action; my business address is 2656 U.S. Courthouse, 1130 O Street, Fresno, California, 93721. On January _13_, 2006, I served the within document on the interested parties in said action by placing a true copy thereof enclosed in a sealed envelope with postage thereon fully prepaid, in the United States mail at Fresno, California, addressed as follows:

Scott Belden, Esq.
KLEIN, DeNATALE, GOLDNER, COOPER,
    ROSENLIEB & KIMBALL
4550 California Ave., Floor 2
P. O. Box 11172
Bakersfield, California 93389-1172

Frank P. Samples, Esq.
1331 L Street
Bakersfield, California 93301

Office of the United States Trustee
1110 U. S. Courthouse
1130 O Street
Fresno, California 93721

I certify (or declare), under penalty of perjury, that the foregoing is true and correct. Executed on January _13_, 2006, at Fresno, California.

_Kathy Jones_
Kathy Torres, PLS

14